UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MOISES ALEXANDER VILLALTA,<br><br>Petitioner,<br><br>v.<br><br>JEFFERSON B. SESSIONS, et al.,<br><br>Respondents. | Case No. 17-CV-05390-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS; DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. Nos. 1, 6 |

On September 18, 2017, Petitioner Moises Alexander Villalta ("Petitioner") filed, through counsel, a petition for writ of habeas corpus under 28 U.S.C. § 2241. *See* ECF No. 1 ("Petition"). Petitioner is a native and citizen of El Salvador who is currently detained in Immigration and Customs Enforcement ("ICE") custody. *See* ECF No. 12-1, Exh. 1 ("Hubbard Decl.") ¶¶ 3, 11. Petitioner argues that his prolonged detention without a bond hearing before an immigration judge ("IJ") is unlawful, and requests that the Court either (1) "[o]rder [Petitioner's] release from [ICE] custody"; or (2) order Respondents Jefferson B. Sessions, III, Elaine C. Duke, David W. Jennings, and David O. Livingston ("Respondents") to "immediately provide a custody hearing at which the government is required to justify" Petitioner's continued detention. Compl. at 16–17. On

1

Case No. 17-CV-05390-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS;
DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

September 19, 2017, Petitioner filed a motion for a temporary restraining order ("TRO") seeking the same relief. *See* ECF Nos. 6, 7. That same day, the Court ordered Respondents to respond to Petitioner's TRO motion. *See* ECF No. 9. On September 22, 2017, Respondents filed a Response.[1] *See* ECF No. 12 ("Resp."). Then, on September 25, 2017, Petitioner filed a Reply. *See* ECF No. 15 ("Reply").

In their Response, Respondents request that the Court resolve Petitioner's habeas petition on the merits. *See* Resp. at 1, 15. Petitioner does not oppose Respondents' request. *See* Reply at 8. Thus, having reviewed the briefing and exhibits submitted by the parties, the Court concludes that Petitioner is entitled to a bond hearing, but not to immediate release from ICE custody. As a result, the Court GRANTS in part and DENIES in part Petitioner's habeas petition, and DENIES as moot Petitioner's TRO motion.

## I. BACKGROUND

Petitioner asserts that he first entered the United States around 1999 after fleeing El Salvador because of violence and threats from the MS-13. ECF No. 5-1, Ex. H ("Villalta Decl."), ¶¶ 1, 31–35. Specifically, Petitioner says that he was targeted by the MS-13 after he identified MS-13 members as the perpetrators of two separate crimes. *See id.* ¶¶ 4–29.

In or around 2011, Petitioner was apprehended by ICE. *See* Hubbard Decl. ¶ 4; ECF No. 7 at 3. Then, in February 2012, ICE placed Petitioner into removal proceedings. Hubbard Decl. ¶ 4. On May 10, 2012, an IJ ordered Petitioner removed to El Salvador. *Id.* ¶ 5; Villalta Decl. ¶¶ 41–46. Petitioner appealed the IJ's order to the Board of Immigration Appeals ("BIA"), which dismissed his appeal in September 2012. Hubbard Decl. ¶ 5. Petitioner was removed to El Salvador in October 2012. *Id.* ¶ 6; ECF No. 12-1 at 6–7. However, in December 2012, government officials encountered Petitioner in Houston, Texas. Hubbard Decl. ¶ 7. Petitioner was subsequently served with a "Notice of Intent/Decision to Reinstate Prior Order," which

---

[1] Respondent David O. Livingston filed a "Non-Opposition to Motion for Temporary Restraining Order," in which he explained that he "takes no position regarding the merits of Petitioner's Motion for a Temporary Restraining Order." ECF No. 13 at 2.

2
Case No. 17-CV-05390-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS; DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

reinstated the previous removal order against Petitioner. *See* ECF No. 12-1 at 9. Then, Petitioner was again removed to El Salvador in January 2013. *See id.* at 11–12.

Petitioner claimed that he subsequently re-entered the United States in 2013. Hubbard Decl. ¶ 9; ECF 12-1 at 16. In January 2017, Petitioner was arrested in Alameda County, California and accused of driving under the influence. Villalta Decl. ¶¶ 56–57. ICE agents took Petitioner into custody at the Alameda County jail on January 25, 2017. *Id.*; Hubbard Decl. ¶ 9.

The next day, ICE once again reinstated Petitioner's prior order of removal. Hubbard Decl. ¶ 11; ECF No. 12-1 at 19. However, because Petitioner expressed a fear of returning to El Salvador, his case was referred to an asylum officer of the United States Citizenship and Immigration Services ("USCIS"). Hubbard Decl. ¶ 12. The asylum officer found that Petitioner had a reasonable fear of persecution or torture upon removal to El Salvador. ECF No. 12-1 at 21. Thus, USCIS referred Petitioner's case to an IJ to conduct "withholding-only" proceedings through which Petitioner could apply for withholding of removal and relief under the Convention Against Torture ("CAT"). Hubbard Decl. ¶ 13; ECF No. 5-1, ECF No. 5-1, Exh. A ("Laner Decl.") ¶¶ 5–6. Petitioner submitted an application for withholding of removal and relief under the CAT. Laner Decl. ¶ 6. On September 11, 2017, Petitioner appeared before the IJ for an individual hearing on Petitioner's application. Hubbard Decl. ¶ 23. The IJ continued the hearing until October 23, 2017 for additional testimony. *Id.*

Petitioner has been detained in ICE custody since January 25, 2017, and remains in detention at Contra Costa County Jail, West County Detention Facility in Richmond, California. *See id.* ¶¶ 9, 14. On August 31, 2017, after Petitioner had been detained by ICE for more than seven months, Petitioner filed a motion for a prolonged detention bond hearing pursuant to *Rodriguez v. Robbins (Rodriguez III)*, 804 F.3d 1060 (9th Cir. 2015) and *Diouf v. Napolitano (Diouf II)*, 634 F.3d 1081 (9th Cir. 2011). *See* ECF No. 5-1 at 29–30. That same day, the IJ denied Petitioner's motion for a prolonged detention bond hearing, stating only that the "court lacks jurisdiction as respondent in withholding only proceedings." *See id.* at 27.

Case No. 17-CV-05390-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS; DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

On September 5, 2017, Petitioner filed a renewed motion for a prolonged detention bond hearing. *See id.* at 20–22. On September 6, 2017, the IJ again denied Petitioner's motion. *See id.* at 18. On September 14, 2017, Petitioner appealed the IJ's bond hearing denial to the BIA. *See id.* at 12–14.

## II. DISCUSSION

Petitioner argues that, as an alien in "withholding-only" proceedings before an IJ, Petitioner is entitled to a bond hearing before the IJ "at which the government is required to justify [Petitioner's] continued detention by clear and convincing evidence that [Petitioner] is a danger or flight risk." Petition at 17; *see Rodriguez III*, 804 F.3d at 1065. Petitioner asserts that he is entitled to a bond hearing because he has been subject to prolonged detention. *See* ECF No. 7 at 7.

Respondents do not contest that Petitioner is in "withholding-only" proceedings. *See* Resp. at 5. Respondents also do not assert that Respondents have already provided Petitioner the type of hearing that Petitioner seeks—specifically, a hearing at which the government is required to justify Petitioner's continued detention by providing clear and convincing evidence that Petitioner is a flight risk or a danger to the community. Further, Respondents do not dispute that Petitioner has been subject to prolonged detention—that is, detention that "has lasted six months and is expected to continue more than minimally beyond six months." *Diouf II*, 634 F.3d at 1092 n.13.

Instead, Respondents argue that Petitioner's habeas petition should be denied because (1) Petitioner failed to exhaust administrative remedies; and (2) in any event, Petitioner is not lawfully entitled to a bond hearing. *See* Resp. at 7–13. For the reasons discussed below, the Court disagrees with Respondents. First, the Court explains why Petitioner is not required to exhaust administrative remedies in these circumstances. Second, the Court explains why Petitioner is entitled to a bond hearing.

### A. Petitioner is Not Required to Exhaust Administrative Remedies

4

Case No. 17-CV-05390-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS;
DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

It is undisputed that Petitioner has not exhausted his administrative remedies. Petitioner has filed two motions for a prolonged detention bond hearing with the IJ, both of which have been denied. *See* ECF No. 5-1 at 18, 20–22, 27, 29–30. Petitioner appealed the IJ's bond hearing denial to the BIA on September 14, 2017, only four days before Petitioner filed the instant habeas petition. *See id.* at 12–14. Respondents argue that the Court should dismiss Petitioner's habeas petition because Petitioner failed to exhaust his administrative remedies. Resp. at 7–9. For his part, Petitioner contends that he should not be required to exhaust administrative remedies. For the reasons discussed below, the Court agrees with Petitioner.

The Ninth Circuit "require[s], as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001). Specifically, "courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). However, courts may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quoting *SEC v. G.C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981)).

Petitioner argues that requiring Petitioner to exhaust administrative remedies would cause Petitioner irreparable harm. *See* Reply at 7. The Court agrees that Petitioner "may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." *McCarthy v. Madigan*, 503 U.S. 140, 147 (1992). Petitioner claims he is entitled to a bond hearing because he has been subject to prolonged detention. As the Court noted above, Respondents do not dispute that Petitioner has been subject to prolonged detention. Indeed, at the time of writing, Petitioner

has been detained by ICE for more than eight months—substantially longer than the six-month marker for prolonged detention set forth in *Diouf II*. 634 F.3d at 1092 n.13. Thus, if Petitioner is correct on the merits of his habeas petition, then Petitioner has *already* been unlawfully deprived of a bond hearing for at least two months. Further, as Petitioner points out, each additional day that Petitioner is detained without a bond hearing would "cause[] him harm that cannot be repaired." Reply at 7. Beyond that, Respondents do not dispute Petitioner's contention that "the BIA often takes four months or more to decide an appeal." ECF No. 7 at 4. Thus, "the potential for irreparable harm to Petitioner, in the form of continued unlawful denial of [bond] hearings" for potentially four months or more, persuades the Court that waiver of the exhaustion requirement is appropriate in the instant case. *Marroquin-Perez v. Boente*, No. 17-CV-00366-PHX-JTT (JFM), 2017 U.S. Dist. LEXIS 122208, at *5–6 (D. Ariz. Aug. 1, 2017). Other district courts within the Ninth Circuit have declined to require exhaustion in cases with similarly-situated petitioners. *See id.*; *Rios-Troncoso v. Sessions*, No. 17-cv-01492-PHX-DGC (MHB), 2017 U.S. Dist. LEXIS 141885, at *6–7 (D. Ariz. Sept. 1, 2017) ("[T]he Court has identified no fewer than six cases in this District in which the exhaustion requirement was waived for similarly-situated petitioners.").

The sole argument that Respondents raise against Petitioner's assertion of irreparable harm is that Petitioner's "detention [without a bond hearing] is lawful and, therefore, cannot cause irreparable injury such that the requirement of exhaustion should be waived." Resp. at 9. However, as the Court explains below, Petitioner's continued detention without a bond hearing is unlawful.

**B. Petitioner Is Entitled to a Bond Hearing**

In order to explain why Petitioner is entitled to a bond hearing, the Court first summarizes the statutes relevant to this case and describes what "withholding-only" proceedings are. Then, the Court provides a brief summary of the relevant law governing detention of aliens awaiting removal from the United States and discusses how the law applies to Petitioner's circumstances.

**1. Relevant Statutes and "Withholding-Only" Proceedings**

The Immigration and Nationality Act ("INA") sets forth a statutory scheme that authorizes detention of aliens awaiting removal from the United States. Different sections of the INA govern different phases of detention. First, 8 U.S.C. § 1226(a) authorizes detention of an alien "pending a decision on whether the alien is to be removed from the United States." Section 1226(a) authorizes detention until a removal order becomes final—that is, until "the latest of the date the order of removal becomes administratively final or, if the alien files a petition for review in the court of appeals and the court of appeals orders a stay of removal, the date of the court of appeals' final order upholding the order of removal." *Diouf II*, 534 F.3d at 1085.

Second, after a removal order becomes final, 8 U.S.C. § 1231(a)(2) authorizes mandatory detention of the alien during a 90-day period called the "removal period." 8 U.S.C. § 1231(a)(2); *see id.* § 1231(a)(1)(A) (defining the "removal period"). Specifically, § 1231(a)(2) states that "[d]uring the [90-day] removal period, the Attorney General shall detain the alien."

Third, 8 U.S.C. § 1231(a)(6) authorizes detention "beyond the [90-day] removal period" of an alien "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." Although § 1231(a)(6) detainees are subject to final orders of removal, and therefore cannot seek direct review of their removal orders, some § 1231(a)(6) detainees may seek collateral review of their removal orders. *See Diouf II*, 634 F.3d at 1086.

If an alien who was previously removed from the United States pursuant to a removal order re-enters the United States and is subsequently apprehended, 8 U.S.C. § 1231(a)(5) allows the government to reinstate the alien's prior removal order, and the alien cannot challenge his reinstated removal order either directly or collaterally. 8 U.S.C. § 1231(a)(5) ("[T]he prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5).

However, if the alien expresses a fear of returning to the country of removal, and if an asylum officer finds that the alien has a "reasonable fear" of persecution, then the alien is placed in

"withholding-only" proceedings before an IJ through which the alien may apply for withholding of removal. *See* 8 C.F.R. § 208.31. These proceedings are known as "withholding-only" proceedings because the IJ's jurisdiction is limited to consideration of whether an alien is entitled to withholding of removal only. *See id.* § 1202.2(c)(3)(i) ("The scope of review in [withholding-only] proceedings . . . shall be limited to a determination of whether the alien is eligible for withholding or deferral of removal.").

### 2. Legal Framework and Application to Petitioner

In *Casas-Castrillon v. Department of Homeland Security*, 535 F.3d 942 (9th Cir. 2008), the Ninth Circuit observed that "prolonged detention" pursuant to 8 U.S.C. § 1226(a) without an individualized bond hearing "would raise serious constitutional concerns." *Id.* at 950; *see id.* at 951. Thus, the Ninth Circuit applied the canon of constitutional avoidance and interpreted § 1226(a) to require the government to provide bond hearings before immigration judges to aliens subject to prolonged detention. *Id.* at 951 ("Because the prolonged detention of an alien without an individualized determination of his dangerousness or flight risk would be 'constitutionally doubtful,' we hold that § 1226(a) must be construed as *requiring* the Attorney General to provide the alien with such a hearing."). The Ninth Circuit also stated that at these bond hearings, the government must "establish[] that [the alien] is a flight risk or will be a danger to the community" in order to justify continued detention of the alien. *Id.* (internal quotation marks omitted).

Only three years after *Casas-Castrillon*, the Ninth Circuit "extend[ed] *Casas-Castrillon* to aliens detained under § 1231(a)(6)" in *Diouf II*. 634 F.3d at 1086. The Ninth Circuit found "no basis for withholding from aliens detained under § 1231(a)(6) the same procedural safeguards accorded to aliens detained under § 1226(a)," and stated that "prolonged detention under § 1231(a)(6), without adequate procedural protections, would raise 'serious constitutional concerns.'" *Id.* (quoting *Casas-Castrillon*, 535 F.3d at 950). As a result, the Ninth Circuit once again applied the canon of constitutional avoidance and "construe[d] § 1231(a)(6) as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention

8

under [§ 1231(a)(6)]." *Id.*

Most recently, in *Padilla-Ramirez v. Bible*, 862 F.3d 881 (9th Cir. 2017), the Ninth Circuit addressed whether an alien in "withholding-only" proceedings is detained pursuant to § 1226(a) or § 1231(a). The petitioner in *Padilla-Ramirez*, like Petitioner here, was in "withholding-only" proceedings after ICE reinstated the petitioner's prior removal order and an asylum officer found that the petitioner "had stated a reasonable fear of persecution or torture if he were removed to El Salvador." 862 F.3d at 883. The Ninth Circuit held that the petitioner was "detained pursuant to [8 U.S.C. §] 1231(a)." *Id.* at 886. Thus, because only two provisions of § 1231(a) authorize detention—§ 1231(a)(2) (which authorizes detention during the 90-day removal period) and § 1231(a)(6) (which authorizes detention beyond the 90-day removal period)—*Padilla-Ramirez* indicates that an alien who is detained while in "withholding-only" proceedings must be detained pursuant to either § 1231(a)(2) or § 1231(a)(6). In turn, under *Diouf II*, an alien who is detained in "withholding-only" proceedings pursuant to the second provision, § 1231(a)(6), is entitled to a bond hearing if the alien has been subject to prolonged detention.

As a result, *Diouf II* and *Padilla-Ramirez* clearly demonstrate that Petitioner is entitled to a bond hearing. First, as the Court noted above, Respondents do not dispute that Petitioner has been subject to prolonged detention. Second, as Respondents correctly acknowledge, Petitioner "is being detained pursuant to . . . [§] 1231(a)(6)." Resp. at 1. The parties agree that Petitioner is currently in "withholding-only" proceedings, so *Padilla-Ramirez* establishes that Petitioner is being detained pursuant to 8 U.S.C. § 1231(a). And as the Court stated above, § 1231(a) contains two detention provisions: § 1231(a)(2) authorizes mandatory detention during the 90-day removal period immediately after an alien's removal order becomes final, while § 1231(a)(6) authorizes detention "beyond the [90-day] removal period" of an alien "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." Because "Petitioner has been detained past the 90-day removal period," Resp. at 1, it is beyond dispute that Petitioner is being detained pursuant to § 1231(a)(6).

9

Case No. 17-CV-05390-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS;
DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

Therefore, the parties are in agreement that Petitioner (1) has been subject to prolonged detention (2) pursuant to 8 U.S.C. § 1231(a)(6). In *Diouf II*, the Ninth Circuit "h[e]ld that an alien facing prolonged detention under § 1231(a)(6) is entitled to a bond hearing before an immigration judge and is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community." 634 F.3d at 1092. Indeed, the *Diouf II* court stated that it "construe[d] § 1231(a)(6)" in this way because a contrary construction "would raise 'serious constitutional concerns.'" *Id.* at 1086 (quoting *Casas-Castrillon*, 535 F.3d at 950). Thus, *Diouf II* plainly requires Respondents to provide Petitioner the bond hearing that he seeks in his petition. *See Rios-Troncoso*, 2017 U.S. Dist. LEXIS 141885, at *8–9 ("[T]he clear language of *Diouf II* . . . extinguishes any doubt that the government is required to provide Petitioner with a bond hearing before an immigration judge.").

The Court does not find persuasive any of Respondent's attempts to distinguish *Diouf II* from the instant case. First, Respondents insist that *Diouf II* does not "afford the opportunity for a bond hearing to aliens like Petitioner" because *Diouf II* held only that "aliens who are subject to a final order of removal"—and not aliens who are subject to a *reinstated* order of removal—"are entitled to bond hearings if detention under section 1231(a) becomes prolonged." Resp. at 12. However, *Diouf II*'s explicit holding makes no distinction between aliens who are subject to final orders of removal and aliens who are subject to reinstated orders of removal. To the contrary, the *Diouf II* court announced: "We hold that an alien facing prolonged detention under § 1231(a)(6) is entitled to a bond hearing before an immigration judge and is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community." 634 F.3d at 1092. Because *Diouf II* "construe[d] § 1231(a)(6)," *Diouf II*'s holding applies to *all* aliens detained under § 1231(a)(6). *Id.* at 1086.

Second, and similarly, Respondents argue that *Diouf II* is distinguishable from the instant case because the petitioner in *Diouf II* "*could* challenge his removal order itself," while "Petitioner here will remain subject to a final order of removal even if his application for withholding of

10
Case No. 17-CV-05390-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS; DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

removal is ultimately granted." Resp. at 10. However, before interpreting § 1231(a)(6) to require bond hearings for aliens subject to prolonged detention under § 1231(a)(6), the *Diouf II* court expressly recognized that some aliens detained pursuant to § 1231(a)(6) would remain subject to a final order of removal in any event. *See* 634 F.3d at 1085 ("Section 1231(a)(6) encompasses aliens such as Diouf, whose collateral challenge to his removal order (a motion to reopen) is pending in the court of appeals, as well as to aliens who have exhausted all direct and collateral review of their removal orders but who, for one reason or another, have not yet been removed from the United States."). Thus, the *Diouf II* court reached its interpretation of § 1231(a)(6) with the understanding that § 1231(a)(6) encompasses aliens who, like Petitioner, can no longer directly or collaterally challenge their removal orders.

Further, *Diouf II* rejected a similar argument the government made against extending "the procedural safeguards accorded to aliens detained under § 1226(a)" to "aliens detained under § 1231(a)(6)." *See* 634 F.3d at 1086. In *Diouf II*, "[t]he government's primary argument for treating § 1226(a) detainees differently from § 1231(a)(6) detainees is that the former are detained while seeking *direct* judicial review of administratively final orders of removal whereas the latter are detained while seeking *collateral* review of final orders of removal (through motions to reopen)." *Id.* The Ninth Circuit rejected this argument in part because "[r]egardless of the stage of the proceedings, the same important [liberty] interest is at stake—freedom from prolonged detention." *Id.* at 1087. Here, Respondents are similarly arguing that § 1231(a)(6) detainees who can still seek collateral review of their final orders of removal should be treated differently from § 1231(a)(6) detainees who, like Petitioner, can no longer collaterally challenge their final orders of removal and who have applied for withholding or deferral of their removal orders. But as *Diouf II* makes clear, "the same important [liberty] interest is at stake" for both of these types of § 1231(a)(6) detainees, even though they are at different "stage[s] of the proceedings." Both types of § 1231(a)(6) detainees have an interest in "freedom from prolonged detention." *Id.*

Third, Respondents point out that "unlike the petitioner in *Diouf II*, who entered the United

11

States on a visa and had never been physically removed from the United States, Petitioner has been physically removed from the United States on two prior occasions." Resp. at 10. However, although Petitioner's prior deportations may demonstrate that the *government*'s interests in detaining Petitioner "present qualitatively different concerns than those addressed in *Diouf II*," *id.*, Petitioner's prior deportations do not change the fact that *Petitioner* has a liberty interest—in being free from prolonged detention—that requires procedural safeguards. *See Diouf II*, 634 F.3d at 1087 ("Regardless of the stage of the proceedings, the same important interest is at stake— freedom from prolonged detention."). In other words, Petitioner's prior deportations may make Respondents even more inclined to continue detaining Petitioner because the prior deportations suggest that Petitioner is a flight risk, but that is exactly the type of concern that bond hearings address. *See Rodriguez III*, 804 F.3d at 1079 (stating that a bond hearing "allows the IJ to consider granting bond" based on "whether the detainee would pose a danger or flight risk if released"). Petitioner's prior deportations may be used against Petitioner at a bond hearing, but Respondents do not explain why Petitioner's prior deportations justify denying Petitioner a bond hearing altogether.

Fourth, Respondents state that "unlike the petitioner in *Diouf II*, Petitioner's removal order in this case is not being judicially reviewed, either directly or collaterally through a motion to reopen." Resp. at 10. Respondents also call attention to the fact that 8 U.S.C. § 1231(a)(5) bars Petitioner from collaterally attacking his removal order. *Id.* However, Respondents offer no explanation for why this distinction matters. Furthermore, Petitioner points out that although Petitioner cannot challenge his removal order, Petitioner "*could* seek judicial review of an adverse decision in [his] withholding-only proceedings." *See Andrade-Garcia v. Lynch*, 828 F.3d 829, 833 (9th Cir. 2016) ("An IJ's negative determination regarding the alien's reasonable fear makes the reinstatement order final, *see* 8 C.F.R. § 208.31(g)(1), and thus subject to [judicial] review under 8 U.S.C. § 1252."). Thus, like a detainee whose removal order is being judicially reviewed, a detainee awaiting judicial review of an adverse decision in his "withholding-only" proceedings

1   may have to wait in detention for a substantial length of time before judicial review is completed.

2   Therefore, both types of detainees face the prospect of prolonged detention. And, as *Diouf II*

3   explicitly held, any alien who actually faces prolonged detention under § 1231(a)(6) is entitled to a

4   bond hearing. 634 F.3d at 1092.

In sum, because Petitioner has been subject to prolonged detention pursuant to § 1231(a)(6), *Diouf II* clearly commands that Petitioner is entitled to a bond hearing at which the government must justify Petitioner's continued detention by establishing that Petitioner is a flight risk or a danger to the community. 634 F.3d at 1092 ("We hold that an alien facing prolonged detention under § 1231(a)(6) is entitled to a bond hearing before an immigration judge and is entitled to be released from detention unless the government establishes that the alien poses a risk of flight or a danger to the community.").

## III. CONCLUSION

For the foregoing reasons, the Court finds that Petitioner is entitled a bond hearing. However, because the Court has no basis to rule on whether Petitioner is a flight risk or a danger to the community, the Court does not find that Petitioner is entitled to immediate release from ICE custody. Thus, the Court GRANTS in part and DENIES in part Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2241 and DENIES as moot Petitioner's TRO motion. Within 14 days of this order, Respondents must provide Petitioner with a bond hearing before an IJ who has the power to grant Petitioner's release on bond if Respondents fail to establish "by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community." *Rodriguez III*, 804 F.3d at 1065.

A petitioner may not appeal a final order in a federal habeas corpus proceeding without first obtaining a certificate of appealability. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is

13
Case No. 17-CV-05390-LHK
ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS;
DENYING AS MOOT MOTION FOR TEMPORARY RESTRAINING ORDER

straightforward: the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court finds that jurists of reason would not find debatable the Court's denial of Petitioner's immediate release from ICE custody. Accordingly, the Court does not issue a certificate of appealability for Petitioner's claim for immediate release from ICE custody.

**IT IS SO ORDERED.**

Dated: October 2, 2017

_____
LUCY H. KOH
United States District Judge